IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LORRAINE F. CHOJNACKI,

                Plaintiff,                    OPINION AND ORDER

v.

                                                   11-cv-103-wmc

CAROLYN W. COLVIN,
Acting Commissioner Social Security Administration,

                Defendant.

---

Plaintiff Lorraine Chojnacki seeks review of the final decision of the Social Security Administration Commissioner partially denying her claim for disability benefits under 42 U.S.C. § 405(g). The Commissioner adopted the findings of an administrative law judge ("ALJ") that Chojnacki suffered from depressive and anxiety disorders, fibromyalgia, degenerative disc disease, radiculopathy and neck pain, and that Chojnacki became disabled on February 27, 2006, as a result of her mental disorders. The ALJ specifically found that Chojnacki was *not* disabled before that date because she could still perform her past work as a potato sorter. It is this latter finding only that Chojnacki challenges on the grounds that the ALJ erred in (1) failing to determine whether her fibromyalgia limited her ability to work before February 27, 2006; (2) discounting the opinion of her treating physician; and (3) assessing her credibility. After reviewing the administrative record, this court will affirm the Commissioner's decision.

## FACTS[1]

### A. Medical Evidence

Lorraine Chojnacki was born on February 9, 1963. (AR 29.) She completed the tenth grade and worked as a potato sorter, window assembler and packer. (AR 30, 46.) Chojnacki's

---

[1]The following facts are drawn from the administrative record ("AR").

insured status expired on December 31, 2004, making the disputed time period in this case between December 31, 2004 and February 27, 2006.

In 1998, Chojnacki began experiencing back problems as a result of a car accident and three earlier work-related injuries. Soon thereafter, her treating physicians started to suspect that she might have fibromyalgia. (AR 433, 440.) When Chojnacki began seeing Dr. Peter Sanderson in April 2003, he noted that Chojnacki had multiple tender spots to palpation and suffered from panic attacks that caused numbness, tingling and a generalized paralysis. Specifically, Sanderson observed that "fibromyalgia is a reasonable diagnosis" and that "her major issue at this point is panic attacks that [are] causing her the most disability." He prescribed Zoloft. (AR 368-70, 823-24.)

On December 22, 2003, Dr. Sanderson completed a medical assessment form on which he reported having seen Chojnacki on a monthly basis and listed her diagnoses as anxiety and chronic back, shoulder and neck pain. Sanderson reported that her symptoms of pain and numbness were severe enough to interfere with attention and concentration; he also reported that Chojnacki's emotional factors would make these symptoms worse. Sanderson opined that Chojnacki could walk a quarter of a block, sit for 15 minutes and stand for 10 minutes, but could sit less than two hours and stand or walk less than two hours in an eight-hour day. Sanderson further opined that Chojnacki could rarely lift less than 10 pounds, never twist or stoop, had environmental restrictions and needed unscheduled breaks. In keeping with these opinions, Dr. Sanderson concluded she could not do any work. (AR 807-12.)

On March 9, 2004, Dr. Sanderson noted that Chojnacki's low back pain had improved. On examination, Sanderson noted minimal tenderness over the paravertebral muscles; no

tenderness in the neck, hip or leg; and normal strength and tone without atrophy or abnormal movements. Even so, Chojnacki still had a rotational restriction due to muscle spasms in her neck. (AR 791.) On March 22, 2004, Chojnacki reported further improvement in her upper neck, shoulder and back pain with medication. (AR 789.) On examination, she had no neck tenderness, some rotational restriction and normal strength and tone without atrophy or abnormal movements. (AR 790.)

By April 20, 2004, Chojnacki's condition worsened again. She reported increased pain in her right arm and neck. On examination, her neck range of motion was restricted, although her right upper extremity had no restriction of motion. (AR 1007-08.) In response, Sanderson added Bextra to the medications that Chojnacki was already taking, which included Zoloft and Baclofen. (AR 1008.) On August 12, 2004, Sanderson reported that Chojnacki's leg pain had improved, but that she had tightness in her upper back.

By February 2005, Chojnacki's back and leg pain had increased. (AR 880, 1001-02.) A lumbar magnetic resonance imaging scan dated March 7, 2005, indicated a large right posterior paracentral disc herniation at L5-S1. (AR 820.) Because steroid injections did not alleviate Chojnacki's symptoms, she elected to undergo lumbar spine surgery on June 2, 2005. (AR 862.) At her June 15 post-operative visit, Chojnacki indicated that her leg pain and numbness had completely resolved but that she had some pain in her lower back and hips. Despite these symptoms, Chojnacki reported an "80% improvement" following surgery. (AR 986.)

From June 15, 2005 to September 13, 2005,Chojnacki attended physical therapy, but was ultimately discharged because she did not show up for or canceled two or more consecutive

appointments (AR 845.) On August 29, 2005, her therapist completed a "driving functional assessment," noting that she was able to rotate to look over her shoulders bilaterally, had adequate lower extremity strength and reported no difficulty sitting for 15 minute intervals. As a result, the therapist reported that Chojnacki possessed the physical requirements for driving. (AR 842.)

Although Chojnacki's pain and paresthesia disappeared after surgery, she began having mild lower back pain in late 2005 and gradually experienced a recurrence of her earlier symptoms. (AR 898). On January 18, 2006, an examination by Dr. Sanderson revealed that Chojnacki's nuchal muscles in her head and neck were tense and tender and that she had some restriction of motion. Still, she had normal strength and tone without any atrophy or abnormal movements. Dr. Sanderson diagnosed chronic neck pain and noted that she would be visiting a pain clinic. (AR 875.)

On January 19, 2006, Chojnacki saw Dr. Mazin Al-Tamini for pain management at the Marshfield Clinic. Chojnacki complained of mid-low-back pain radiating into her hips and pain in her mid-back, around her neck and right hand. She indicated that earlier physical therapy treatments, chiropractic treatment, lumbar injections and anti-inflammatory medications had not helped, but a TENS unit, narcotic pain medication and antidepressants had helped. (AR 900-01.) On examination, Chojnacki had superficial tenderness in the lumbosacral and paraspinal areas; there was no discrepancy on straight leg raising testing; she could walk on her heels and toes; motor power was normal; and there were no sensory changes. (AR 898.) Chojnacki reported that she was able to use the bathroom independently and do some laundry.

4

She also could feed and dress herself, as well as set the table, but reported that she did so slowly and clumsily.  (AR 901-902.)

On February 22, 2006, Jean Erdal at the Marshfield Clinic performed a physical and occupational therapy initial evaluation and assessment of Chojnacki.  Erdal noted poor effort and inconsistency during the testing, concluding that Chojnacki's subjective complaints did not correlate with her physical examination.  (AR 911.)

In a disability report dated March 22, 2006, Chojnacki alleged disability due to lower back and neck pain, tendinitis in both hands, panic attacks and problems with concentration.  She reported that her conditions prevented her from lifting more than five to ten pounds, sitting for more than five minutes without moving, walking more than short distances, and bending, twisting or stooping.  Chojnacki also reported numbness in her legs, the inability to grasp small objects or open jars, panic attacks during times of stress and noise, and difficulties with household chores.   (AR 316.)

In August 2006, Dr. Sanderson completed his own report, indicating that he saw Chojnacki on a regular basis and had last seen her in March 2006.  (AR 1129.)  Sanderson opined that Chojnacki had been disabled and unable to work due to pain since 2003 and that her condition would not improve.  (AR 1128-29.)

B.  <u>Consulting Physicians</u>

On June 15, 2004, state agency physician Mina Khorshidi completed a physical residual functional capacity assessment for Chojnacki, listing diagnoses of fibromyalgia, neck pain and back pain.  (AR 1094.)  Khorshidi found that Chojnacki could lift 20 pounds occasionally and

10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday. (AR 1095.)

On November 10, 2006, Dr. Khorshidi completed a second physical residual functional capacity assessment for Chojnacki, listing a diagnosis of "back pain, status post surgery." (AR 1068.) Khorshidi found that as of December 31, 2004, the date of her original opinion, Chojnacki could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday. (AR 1069.) Khorshidi noted further that Dr. Sanderson's September 2006 restrictions were not consistent with these findings. (AR 1074.)

### C. Hearing Testimony

At the hearing before ALJ Turner, Chojnacki testified that she had last worked on November 15, 1999. (AR 30.) She lived with her parents between June 2004 and 2006, during which time she helped do the dishes and set the table on "better days," and on "bad days," she spent a lot of time on the couch. Chojnacki testified that she was able to care for her own personal hygiene, dress herself, and attend church, although she had problems kneeling. (AR 38-39.) She also testified that she could lift only up to five pounds (AR 39), sometimes suffered cramps in her hands and dropped things (AR 40), and wore braces on her hands when she needed them (AR 44). Chojnacki also testified that her condition worsened because of stress after she moved out of her parents house in 2006. (AR 37, 42.)

With regard to her back and neck pain, Chojnacki testified that she experienced two to three attacks a week that paralyzed her for ten to fifteen minutes and five to six minor attacks

during a day. A minor attack occurred if she sat too long or if she was driving and there was too much traffic. In the better case, she would become anxious and had to pull to the side of the road to walk around. (AR 40-41).

The ALJ called Dr. Joseph Malancharuvil, Ph.D., to testify as a neutral medical expert about Chojnacki's mental impairments. (AR 30.) He testified that as of February 27, 2006, Chojnacki had mental impairments that met Listings, 12.04, Affective Disorders, 12.06, Anxiety Related Disorders and 12.07 Somatoform Disorders. (AR 31-32.) He also testified that before that date, Chojnacki's mental impairments did not meet the severity of the listings, because the objective evidence indicated that she could have performed simple work with up to four or five step instructions in a repetitive setting. Even so, Malancharuvil acknowledged that Chojnacki would be limited to object-oriented work, restricted from highly paced work, and could not be involved in safety operations or operate hazardous machinery. (AR 32.)

The ALJ also called Susan Allison to testify as a neutral vocational expert. (AR 45.) Allison testified that Chojnacki had past relevant work as a (1) window assembler (DOT # 865.684-014), which involved medium exertion, semi-skilled and specific vocational preparation of 2; (2) potato sorter and packer (DOT # 529.687-186), involving light unskilled work with a specific vocational preparation of 2; and (3) order taker (DOT # 249.362-026), involving sedentary semi-skilled work with a specific vocational preparation of 4. (AR 46.) The ALJ asked the vocational expert to assume an individual with Chojnacki's characteristics and the work limitations described by Malancharuvil, then she asked the expert whether this individual could perform Chojnacki's past work. Allison testified that the individual could perform Chojnacki's past work as a potato sorter. (AR 47.) The ALJ also asked if that individual could perform this

past work if she had the limitations found by Sanderson in 2006. Allison responded that she could not. Finally, the ALJ asked Allison whether her testimony conformed with the *Dictionary of Occupational Titles*. She responded that it did. (AR 47.) In answer to a question by Chojnacki's attorney, Allison also testified that the individual could not work in the national economy if limited to unskilled work, must alternate positions every 10 to 15 minutes and must take five minutes every half hour to an hour to walk around. (AR 48.)

### D. Administrative Law Judge's Decision

The ALJ found that Chojnacki had not engaged in substantial gainful activity since June 16, 2004, her alleged onset date, and currently had the severe impairments of major depressive and anxiety disorders, fibromyalgia, degenerative disc disease, radiculopathy and neck pain. (AR 20.) The ALJ also determined that prior to February 27, 2006, Chojnacki did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1, including Listing 1.00, Musculoskeletal impairments. (AR 21.)[2] Finally, the ALJ concluded that Chojnacki's May 2005 psychological testing showed that she did not have a listed mental impairment prior to February 27, 2006. (AR 21.)

Based on the testimony of the vocational expert Susan Allison, the ALJ found that Chojnacki was able to perform her past relevant work as a potato sorter before February 27, 2006. More generally, the ALJ noted that she retained the residual functional capacity ("RFC")

---

[2] In making this finding, the ALJ relied on the medical expert's testimony that Chojnacki's mental impairments had become disabling as of February 27, 2006. Although it is not clear what happened at that point, the court will accept the February 26, 2006 date as the commencement of Chojnacki's period of disability because neither party has challenged this finding.

to perform light simple work with four to five step instructions in a repetitive setting, not requiring safety operations, operating hazardous machinery, rapid assembly or fast paced work and limited to an object oriented work setting. (AR 21.)

The ALJ ultimately concluded that Chojnacki's testimony that she was disabled and unable to work before February 27, 2006, was not entirely credible because she had a positive response to conservative care and retained the ability to use the bathroom independently, feed and dress herself, set the table, do laundry and drive. Particularly persuasive to the ALJ were the February 22, 2006, observations of her Marshfield Clinic physical therapist that Chojnacki's subjective complaints did not correlate with the physical examination. (AR 22-23.)

On the other hand, the ALJ gave little weight to the 2003 initial opinion expressed by Dr. Sanderson that Chojnacki would never be able to return to work. She noted that his subsequent treatment notes indicated that Chojnacki had experienced marked, if temporary, improvement with medication in 2004 and with surgery in 2005. The ALJ instead relied on the opinion of Mina Khorshidi, the state agency physician, that Chojnacki could perform light work. (AR 23.)

Although the ALJ found that Chojnacki was not disabled as of December 31, 2004, she found that the severity of Chojnacki's mental disorders met the requirements of Listings 12.04, Affective Disorders, 12.06, Anxiety Related Disorders and 12.07, Somatoform Disorders as of February 27, 2006. (AR 24-25.)

**OPINION**

**I.      Fibromyalgia**

Chojnacki argues that because the ALJ found her fibromyalgia to be a severe impairment, she should have considered it in making her RFC determination. Chojnacki notes that although the medical record shows her suffering symptoms of fibromyalgia since 1998, the ALJ ignored those symptoms and instead focused on her musculoskeletal complaints of lower back and leg pain.[3]

Chojnacki mistakenly concludes that the ALJ's failure to mention the term "fibromyalgia" in her RFC discussion necessarily means that the ALJ ignored its limiting effects. The ALJ accurately summarized Chojnacki's alleged limitations, many of which were related to fibromyalgia, and reviewed her medical history. The ALJ also relied on the 2004 opinion of state agency physician Mina Khorshidi, who noted that even though Chojnacki had fibromyalgia, she could perform light work. Although the medical evidence discussed by the ALJ focused on Chojnacki's musculoskeletal issues, fibromyalgia is by definition a disorder characterized by widespread muskuloskeletal pain, as well as fatigue, sleep, memory and mood issues. *See* www.mayoclinic.com/health/ fibromyalgia/DS00079 (visited June 18, 2013). Further, as the commissioner points out, whether fibromyalgia is disabling depends on the symptoms and limitations it causes. *Estok v. Apfel* 152 F.3d 636, 640 (7th Cir. 1998) ("[F]ibromyalgia is not always (indeed, not usually) disabling.").

---

[3]Chojnacki also criticizes the ALJ for misreading the medical evidence related to some of her treatment. Because those arguments relate to the ALJ's reasons for discounting the opinion of Dr. Sanderson, the court will address them in the section of the opinion entitled "Treating Physician."

Notably, Chojnacki does not identify any additional limitations that the ALJ failed to consider with respect to her fibromyalgia diagnosis. Instead, she argues that the ALJ ignored medical records detailing her fibromyalgia diagnoses, chronic pain, and trigger points. However, the records cited by Chojnacki are dated even before *her* alleged onset date of June 16, 2004. As a result, the ALJ did not err in failing to mention them in her RFC assessment, which addressed the relevant period of December 31, 2004, through February 27, 2006. Further, although those records indicate that Chojnacki had fibromyalgia, Chojnacki does not assert that they establish different limitations than those considered by the ALJ. Even Chojnacki's own treating physician did not place great weight on Chojnacki's fibromyalgia diagnosis in assessing her ability to work between 2003 and 2006. His written opinions discuss her shoulder, neck and back pain, but make no reference to fibromyalgia as an independent or separate limiting condition. Moreover, his opinions are *consistent* with Chojnacki's own testimony describing neck, back and hand pain as the cause of her limitations. In light of these facts, the court concludes that the ALJ properly considered the effects of Chojnacki's fibromyalgia when assessing her residual functional capacity.

## II.     Treating Physician Opinion

Chojnacki asserts that the ALJ erroneously rejected Dr. Sanderson's opinion that she could not work after December 2003 and instead adopted the opinion of a non-examining physician. A treating physician's opinion is entitled to controlling weight *unless* it is not supported by the physician's records or is inconsistent with the reports of other sources. 20 C.F.R. § 404.1527(d)(2); *Scott v. Astrue*, 647 F.3d. 734, 739 (7th Cir. 2011). An ALJ who

concludes that such an opinion is not entitled to controlling weight must give good reasons for that conclusion. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). An opinion of a non-examining physician is not sufficient by itself to provide evidence necessary to reject a treating physician's opinion. *Gudgel v. Barnhart*, 345 F. 3d 467, 470 (7th Cir. 2003). Other factors the administrative law judge should consider are: the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527(d)(2); *Scott*, 647 F.3d at 740 (reaffirming this standard).

Chojnacki asserts that "[n]o consideration was mentioned of the length of treatment, the specialty of the doctor, the objective evidence such as the mental status exams, the medical treatment, the medication provided or any consistency or inconsistency between the Listing opinion and the medical record." (Plf's Br., dkt. 11 at 31.) Although a few of these factors weigh in support of Dr. Sanderson's opinion, the ALJ expressed good reasons for finding his opinion that Chojnacki could not work after 2003 to be inconsistent with and not fully supported by the record. The ALJ noted that subsequent medical records showed that Chojnacki had been treated conservatively until her surgery in 2005, experienced improvement in her symptoms with medication in March 2004, reported an 80% improvement after undergoing lumbar spine surgery, and possessed the physical requirements for driving as of August 29, 2005. The ALJ also noted that a January 19, 2006, progress note showed only superficial tenderness and normal motor functioning and sensation. Although the ALJ wrote that Chojnacki had

complained of cramping and aching in her right hand, she was able to use the bathroom independently, feed and dress herself, set the table, do laundry, and drive.

Chojnacki also criticizes the ALJ for not identifying what she meant by "conservative treatment," arguing that steroid injections and surgery are invasive procedures. However, the ALJ's statement is consistent with the medical record, which indicates that Chojnacki had been treated solely with medication (sometimes successfully) between 2003 and 2005. Similarly, Chojnacki faults the ALJ for failing to note that although the June 2005 surgery greatly improved her symptoms, her back pain returned within three months. Although Chojnacki claims that her pain returned to a point of complete disability at that point, the ALJ had good reasons to suspect otherwise, including physical examinations performed on August 29, 2005 and January 19, 2006, showing that Chojnacki had normal functioning. In response, Chojnacki points to her February 2006 therapy assessment, which she claims "clearly" showed limited range of motion, strength and muscle tone throughout her body, but as previously discussed, the physical therapist performing that assessment (1) took time to note that it was impossible to test Chojnacki accurately, because she exhibited poor effort; and (2) ultimately concluded that Chojnacki's subjective complaints did not correlate with her physical examination. Because it was reasonable for the ALJ to find Sanderson's opinions inconsistent with the evidence as a whole, the court has no basis to overturn that determination.

### III.     Credibility Determination

Finally, Chojnacki contends that the ALJ erred in finding that her own testimony concerning her limitations was not credible. An administrative law judge's credibility

13

determination is given special deference because that judge is in the best position to see and hear the witness and to determine credibility. *Shramek v. Apfel*, 226 F.3d 809, 812 (7th Cir. 2000). In general, an administrative law judge's credibility determination will be upheld unless "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2004); *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). This level of deference does not, however, relieve an administrative law judge of her obligation to build an accurate and logical bridge between the evidence and the result discussed earlier. *Shramek*, 226 F.3d at 811.

Relevant factors the ALJ must consider include: the claimant's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions. *See* SSR 96-7p; 20 C.F.R. §§ 404.1529©, 416.929©; *see also Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Here, the ALJ found that Chojnacki's testimony "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to February 27, 2006." (AR 22.) Chojnacki objects that the ALJ's finding is conclusory, citing the Seventh Circuit's admonitions about using "boilerplate language" that is "meaningless" and "unhelpful."

*Schauger v. Astrue*, 674 F.3d 690, 696 (7th Cir. 2012); *Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012); *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010). While the ALJ's ultimate credibility determination might be characterized as "boilerplate," the judge supported her determination with evidence from the record. In particular, the ALJ considered the medical record, reports from Chojnacki's treating physician, and her self-identified activities. As outlined above, the ALJ noted the improvements that Chojnacki made in 2004 and 2005, her normal examinations in 2005 and 2006, and the opinions of Khorshidi and Malancharuvil that Chojnacki was not disabled from December 2004 to February 2006. Particularly persuasive for the ALJ was the therapist's conclusion that Chojnacki put little effort into the February 2006 testing and that her subjective complaints did not correspond with the results of her physical examination.

Although Chojnacki also accuses the ALJ of failing to consider all of the enumerated factors found in SSR 96-7p, particularly her failure to reference Chojnacki's pain specifically, the ALJ did discuss all of Chojnacki's stated limitations. Further, the ALJ was present and asked questions when Chojnacki testified about the paralyzing "attacks" of pain she experienced between 2004 and 2006. Thus, while the ALJ did not explicitly consider every relevant factor listed in SSR 96-7p, she considered all of the relevant evidence and her findings are supported by substantial evidence in the record.

Ultimately, Chojnacki has not demonstrated that this is one of those "rare occasions" in which the court should disturb the ALJ's credibility finding. The ALJ built an accurate and logical bridge between the evidence and her conclusion that Chojnacki's view of her own

limitations was not fully credible.  In doing so, the judge properly and expressly took into consideration the medical evidence and Chojnacki's testimony, including accounts of her pain.  Based on this record, the court concludes that the administrative determination was not patently wrong.

## ORDER

IT IS ORDERED that the decision of defendant Carolyn Colvin, Acting Commissioner of Social Security, is AFFIRMED and plaintiff Lorraine F. Chojnacki's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 21st day of January, 2014.

> BY THE COURT:
>
> /s/
> _____
> WILLIAM M. CONLEY
> District Judge